IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL HINDS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. G-05-133 |
| SPECTRUM EQUITY INVESTORS IV, L.P., et al., | § § § § | |
| Defendant. | § § § | |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT

This case arises out of an alleged contract for consulting services between Plaintiff and Defendants. Now before the Court are Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Strike Plaintiff's Affidavit. For the following reasons, Defendants' Motion is respectfully **DENIED**.

**I. Background**

The facts as alleged in Plaintiff's Complaint are as follows. He alleges generally that the remaining Defendants (Providence Equity Partners IV, LP; Providence Equity Operating Partners IV, LP; Providence Equity Partners, Inc. (collectively, "Providence"); Consolidated Communications Illinois Holdings, Inc., f/k/a Consolidated Communications Holdings, Inc. ("CCIH"); and Consolidated Communications, Inc. ("CCI")), through their agents, made a

contract with him for consulting services for the purchase of TXU Communications ("TXU"), a Texas company.

TXU was put up for sale in May 2003. Plaintiff, an experienced investor with ties to TXU, started to put together a group of investors to purchase TXU. His preparations included a preliminary agreement for financing with the GulfStar Group. Had he completed this purchase, Plaintiff would have had a 20-25% stake in TXU.

Mark Pelson, Kevin Maroni, and Robert Currey then tried to convince Plaintiff to abandon his plans and join their investment group. Plaintiff alleges in his Response, though not his Complaint, that Pelson invited him to Pelson's office in Providence, Rhode Island to discuss the matter, and that Pelson called him from his Providence office. Plaintiff alleges that Currey offered him an $800 per day consulting fee, a success fee of 1% of the total value of the enterprise if the purchase was completed, reimbursement for his expenses, and an opportunity to invest in TXU. On August 4, 2003, four days before the deadline for the first round of bids, Currey and Plaintiff agreed to these terms over the phone. Plaintiff was in Houston at the time. Currey also confirmed that Plaintiff would have an opportunity to invest in TXU. Currey denies agreeing to pay the success fee or offering Plaintiff the investment opportunity. (Currey Aff. at 3.)

Plaintiff believed that Currey, who is the president and chief executive officer of both CCIH and CCI, was acting on behalf of both entities. (Hinds Aff. at 2.) Currey has stated that he was acting only on behalf of CCI. (Currey Aff. at 3.) Defendant CCIH states that while it expressed initial interest in purchasing TXU, it did not contract with Plaintiff. (Currey Aff. at 3.) CCIH is the parent company of CCI, although Currey states that CCIH does not control the day-

to-day operations of CCI. (Currey Aff. at 3.) Plaintiff has also stated that he believed that Pelson, a director of CCIH and CCI, Managing Director of Providence Equity Partners, Inc., and limited partner in the partnerships that are general partners of the other Providence Defendants, represented all those Defendants and that he did not indicate that he was only acting on behalf of CCI. (Hinds Aff. at 2.) Pelson contends that he acted only on behalf of CCI. (Pelson Aff. at 2.) Plaintiff also believed that Maroni, a director of former Defendant Homebase Acquisitions, LLC as well as of CCIH and CCI was acting on behalf of all those entities[1]. Maroni states that he only acted on behalf of CCI. (Maroni Aff. at 2.)

Another group, Valor Communications, outbid Defendants in the first round in August 2003. Plaintiff convinced TXU to extend the due diligence period for Defendants. On September 17, 2003, CCIH sent a confidentiality agreement to Plaintiff in Houston. (Pl. Ex. C.) This agreement was signed by Currey and Plaintiff. According to Currey, it was executed in Mattoon, Illinois. (Currey Aff. at 3.) On October 22, 2003, Plaintiff and Richard Lumpkin (chairman of the Board of Directors of CCIH, CCI, and former Defendant Homebase Acquisitions, LLC), Maroni, and Pelson met in Dallas to discuss their bud strategy. Plaintiff alleges that they confirmed the terms of Plaintiff's consulting contract and his opportunities for investment. The other individuals dispute this. (Lumpkin Aff. at 2; Pelson Aff. at 2; Maroni Aff. at 2.)

Valor Communications was ultimately unable to close the deal, and Plaintiff used his contacts to help secure exclusive negotiating rights for Defendants. Defendants closed on their purchase of TXU for $524 million in April 2004. Defendants state that Consolidated Communications Acquisition Texas, Inc. made the purchase. (Currey Aff. at 2.)

---

[1] Maroni is also a general partner or member of the limited liability companies that are general partners in each of the Spectrum entities that were formerly Defendants in this case.

Plaintiff submitted an invoice to Currey at CCI for about $40,000 for work done before Valor Communications' bid. (Defs. Ex. 8.) This invoice was paid. After Defendants announced their purchase of TXU, Plaintiff submitted another invoice for $30,000 for his daily fee plus his 1% success fee. He also asked about his investment opportunities. (Defs. Ex. 8.) Defendants did not pay this invoice or allow Plaintiff to invest in TXU.

Plaintiff has alleged breach of contract, unjust enrichment, promissory estoppel, fraud, breach of fiduciary duty, negligent misrepresentation, and conspiracy.

## II. Motion to Strike Portions of Plaintiff's Affidavit

Defendants have moved to strike portions of Plaintiff's affidavit as conclusory. While on a motion to dismiss for lack of personal jurisdiction the Court should not accept conclusory allegations as true if the opposing party challenges them, the Court must resolve all disputed issues of *fact* in favor of the plaintiff. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). In this case, Plaintiff's statements in his affidavit that he was led to believe that Currey and Pelson were acting on behalf of CCIH and Providence are evidence on a disputed issue of fact. Plaintiff has personal knowledge on this point. Defendants' contrary evidence consists merely of affidavits saying the opposite. This is exactly the type of issue that must be resolved in favor of the plaintiff on a motion to dismiss. *See id*. (finding that district court committed reversible error by failing to resolve "factual conflicts contained in the affidavits" in favor of the plaintiff). Had Defendants presented deposition testimony or even affidavits with more specific facts than Plaintiff's, the Court might be inclined to give Defendants' evidence more weight. However, the affidavits in the record are no more than a he said-she said exposition of the facts. Therefore, the

Court must credit Plaintiff's allegations as true. Defendants' Motion to Strike Plaintiff's Affidavit is **DENIED**.

### III. Motion to Dismiss: Legal Standard

As a nonresidents of Texas, Defendants are subject to personal jurisdiction in this District if they are amenable to service of process under Texas's long-arm statute and the exercise of personal jurisdiction is consistent with due process. *See Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). Texas's long-arm statute grants jurisdiction over nonresident defendants who do business in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). Jurisdiction over those doing business in Texas is coterminous with the jurisdiction allowed under the Due Process Clause of the United States Constitution. *See Williams v. Castro*, 21 F. Supp. 2d 691, 692 (S.D. Tex. 1998); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990).

The question of personal jurisdiction therefore collapses into a single due process inquiry. Whether the exercise of personal jurisdiction over Defendants is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that the Defendants have "minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). Second, the Court must determine that requiring Defendants to litigate in the forum does not offend "traditional notions of fair play and substantial justice." *Id.*; *see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). The "minimum contacts" aspect of due process can be satisfied by finding either specific jurisdiction or general jurisdiction. *See Wilson*, 20 F.3d at 647. Contacts unrelated to the cause of action may

confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873, 80 L. Ed. 2d 404 (1984). A defendant's limited contact with the forum state may support specific jurisdiction if it gives rise to the cause of action. *See Ruston Gas Turbines*, 9 F.3d at 419 ("A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). Specific jurisdiction is proper if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (holding that a defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there"); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. 2d 1283 (1958).

Plaintiff and Defendants disagree over facts significant to the resolution of this issue. Plaintiff need only make a prima facie showing of jurisdiction, and any conflicts between affidavits are resolved in favor of Plaintiff. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir. 1990); *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990); *Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp. 2d 815, 818 (S.D. Tex. 2001). Since Plaintiff has provided affidavits supporting his version of the facts, the Court must accept those facts as true for the purpose of considering these Motions.

**IV. Analysis**

Defendant CCI does not challenge personal jurisdiction, and Plaintiff has voluntarily dismissed Spectrum Equity Investors III, LP; Spectrum Equity Investors IV, LP; Spectrum Equity Investors Parallel IV, LP; SEI Entrepreneurs' Fund, LP; Richard Lumpkin; Spectrum IV Investment Managers' Fund, LP; Spectrum III Investment Managers' Fund, LP; and Homebase Acquisition, LLC.  Defendants' Motion as it concerns the dismissed Defendants is **DENIED AS MOOT**.  The remaining Defendants, Providence and CCIH (collectively, "Defendants"), argue that this Court cannot exercise personal jurisdiction over them.  None of the Defendants are residents of Texas.

A. CCIH

CCIH's contacts with Texas in relation to this matter are as follows:  1) CCIH entered into a confidentiality agreement with Plaintiff, a Texas resident, for the purpose of his contractual duties in helping CCIH purchase TXU, a Texas company;[2] 2) Currey and Pelson called Plaintiff in Texas from their out-of-state offices to offer him a contract; 3) Currey, Pelson, Lumpkin, and Maroni, all directors or officers of CCIH, met with Plaintiff in Dallas, Texas to discuss their strategy for purchasing TXU and confirmed the contract terms; and 4) CCIH now owns part of TXU, a Texas company with assets in Texas.  Defendants dispute these facts, but since Defendants have offered no evidence of this other than affidavits, the Court must accept the allegations in Plaintiff's Complaint and Affidavit as true, as discussed above.  Also, Plaintiff's contention in his pleadings and affidavit that he believed these men to be acting on the behalf of CCIH is not necessarily inconsistent with Defendants' affidavits stating that they were not

---

[2] This contract was signed by Currey, President of CCIH, in Illinois, and apparently sent to Plaintiff in Texas for his signature.  CCIH claims in its Motion that the contract was signed by both Parties in Illinois, but this ignores the information apparent on the face of the exhibit, which is that it was sent to Plaintiff in Texas with a request that it be signed and returned.  (Defs. Ex. 5.)

actually agents of CCIH in this transaction. Therefore, Defendants have not presented any evidence that Plaintiff's allegations are false. Whether these individuals were acting as agents of CCIH is an integral part of Plaintiff's claim–if they were not, then CCIH is not liable. The Court is reluctant to force Plaintiff to prove a central fact issue in the substantive part of the case either in his Complaint or in a challenge to personal jurisdiction. The rules on proof of jurisdiction are designed to force a plaintiff to come forward with basic allegations, but they clearly contemplate the fact that the plaintiff will rarely be prepared to prove jurisdiction by a preponderance of admissible evidence. Defendants here label everything Plaintiff says "conclusory." To the extent that Plaintiff has made conclusions of law, the Court has ignored them. But to the extent that Plaintiff has made conclusions about his own beliefs, the Court finds these acceptable for consideration.

Because CCIH had initially expressed interest in purchasing TXU and because Plaintiff entered into the confidentiality agreement with CCIH relating to the possible purchase, the Court finds it entirely reasonable that Plaintiff believed that Currey, Pelson, Lumpkin, and Maroni were acting in their capacity as officers or directors of CCIH when they allegedly promised him certain compensation and investment opportunities. These men met Plaintiff in Dallas for the express purpose of discussing the TXU purchase that Plaintiff was facilitating. See *Colwell Realty Invs., Inc. v. Triple T Inns of Ariz., Inc.*, 785 F.2d 1330, 1335 (5th Cir. 1986) (finding that officers and directors traveling to Texas would be evidence of purposeful availment). Meeting in Texas was not a "random or fortuitous" occurrence; the meeting occurred there because it concerned the purchase of a Texas company. *ICEE Distribs., Inc. v. J&J Snack Foods, Corp.*, 325 F.3d 586, 593 (5th Cir. 2003). According to Plaintiff, Defendants contemplated "an ongoing business

relationship" with Plaintiff both by affirming the details of his contract, which had not been completely performed at that time, and by offering him the opportunity to invest with them in TXU.  *Colwell,* 785 F.2d at 1334; *see also Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184, quoting *Travelers Health Assn. v. Virginia*, 339 U.S., 643, 648, 70 S. Ct. 927, 929, 94 L. Ed. 1154 (1950), (finding purposeful availment when a defendant has "created 'continuing obligations' between himself and residents of the forum").  This meeting, in conjunction with the other ties to Texas, suffices to establish specific jurisdiction over CCIH.  The meeting constituted a purposeful availment of the privilege of conducting business in Texas.  CCIH could reasonably expect to be haled into court in Texas on a lawsuit concerning this contract.

Also, the exercise of personal jurisdiction over Defendants by this Court does not offend traditional notions of fair play and substantial justice.  In making this determination, the Court considers "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief."  *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987).  Plaintiff, a resident of this District, has a strong interest in the convenience of litigating here.  The citizens of this State also have a strong interest both in protecting the contractual rights of other citizens and in enforcing contracts related to the purchase of significant assets in Texas.  CCIH has not shown that litigating here will be a particular burden.  For these reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to CCIH is hereby **DENIED**.

B.  *Providence Defendants*

Providence's ties to this case are the actions of Pelson and the ownership of part of TXU.  Plaintiff states that he believed Pelson acted in his capacity as a partner or director of the various

Providence entities when Pelson made certain promises to Plaintiff both over the phone and at the Dallas meeting. While the Court finds it very reasonable that Plaintiff believed that CCIH was involved in the contract since four of its directors and/or officers were present at the meeting and allegedly made promises to him, the Court finds less support for Plaintiff's belief that Pelson intended to bind Providence to the contract. Nonetheless, if Pelson was representing Providence at the Dallas meeting at which the essence of the transaction was discussed, then the Court has personal jurisdiction over the Providence Defendants. The Court simply does not have enough information to make a final determination. The Court **DENIES** the Motion to Dismiss for Lack of Personal Jurisdiction by the Providence Defendants at this time, but it accepts that the Providence Defendants are asserting this defense and are specially appearing as to all further proceedings until this matter is resolved. The Court grants the Parties the right to seek discovery on jurisdictional issues, and should Providence wish to re-urge this Motion with appropriate additional support, the Court would be happy to consider it at that time. Providence's right to assert a of lack of personal jurisdiction is expressly preserved.

**V. Conclusion**

The Court finds that it has personal jurisdiction over Consolidated Communications Illinois Holdings, Inc. As to the Providence Defendants, on the facts as shown so far, the Court believes that it has personal jurisdiction. However, the Court grants Plaintiff and the Providence Defendants leave to conduct additional discovery on this issue, and the Court expressly preserves the Providence Defendants' ability to contest personal jurisdiction. Given the current situation, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is hereby respectfully **DENIED**.

Defendants' Motion to Strike Plaintiff's Affidavit is also **DENIED**. Each Party is to bear its own expenses, attorneys' fees, and taxable costs incurred herein to date.

    **IT IS SO ORDERED**.

    **DONE** this 17th day of June, 2005, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge